The opinion of the court was delivered by
Duncan, J.
This was an action for money had and received for the use of William, Elizabeth, and Jane Wright, infant children of John Wright, deceased. The evidence was, that certain property belonging to their father, who had deserted his family and disappeared, and whose death was fairly to be presumed, under some understanding between his wife and her brother, William Lee, the plaintiff in error and defendant below, was concealed and covered, as was said, to prevent their being seized for the payment of John Wright’s debts. Certain proceedings, to give some colour to the acts of William Lee, were done, principally by his advisement. In the course of years, this property, or a conside- *110 rabie part of it, has been transmuted in a course of business carried on by Mrs. Wright, in the name of William Lee, who repeatedly declared, it was for the use of the children. In 1814, after the marriage of Mrs. Wright with one Chase, an appraisement of the goods was made, and the whole stock and furniture were taken by Chase at two thousand dollars, who gave his judgment bond to Lee for the amount. Lee, in the same year, on some misunderstanding with Chase, entered up his judgment, issued an execution, and levied on these goods. A motion .was made to set aside the execution, and an issue was directed by the court. Before this came to trial, Lee and Chase came to some agreement, and divided the goods between them. These goods were the furniture of John Wright, and articles in the shoe-making line, manufactured by Mrs. Chase, after the death of her husband, she having married her journeyman, Chase. In 1817, Lee entered up his judgment in New Jersey, to which state Chase had removed, and levied on the furniture and other property which was partly the property of Wright, her first husband, and partly property acquired by Mrs, Wright and sold, always declaring that he bought them for thé use of the children.
. Two questions were made in the District Court: 1st. Whether the plaintiffs could sustain'an action in their joint names, or at all without taking out administration on the estate of their father, John Wright. 2d. Whether, in case they proved any money to have come into the hands of William Lee on account of these goods, they could in this form of action recover more than Lee actually received i
It is quite clear, that the children of a decedent cannot bring any action for his property without administration, and that even against an administrator they could not join in the same action for their distributive parts. In that aspect of the case, it would be with the plaintiff in error; but this action is not so brought. It. is brought against Lee, not as trustee by act and operation of law, but on an express declaration of trust that he held the property for the use of the children of John Wright. In this action, which is in fact a bill in equity, it will not be endured, that he should say to cestui que trusts, all these transactions between your mother and me áre in fraud of the law, to conceal the property from your father’s creditors, and I am only to account to the legal administrator for them. The children participated in no fraud. If their mother, their natural guardian, and their uncle, standing in loco parentis, conceived it proper to go on without administration, and take possession of the effects of John Wright, and these effects, or the proceeds of them in money, have come to the hands of the defendant, on his express promise that he held them in trust for the children, he would be liable for the money he has received in this trust, to the children in this form of action. It disturbs not the order of payment of debts, for all subsisting *111 debts have been paid. Cui bono take out letters of administra-, tion? The uncle has their father’s goods; the lather’s debts are paid. The uncle has received the money on an express undertaking to account to them for it. But it is said, they should each one have brought an action for their separate proportion. The action is founded on a promise implied or expressed. If it be on an implied promise, then it must follow the nature of the consideration, and as that is joint or several, so must the action be. But where it.arises on an express' promisé, as here, that he held in trust for all the children; and as the action could not be sustained at all, without proof of this, then the nature of the action is governed by the consideration of its being an express promise, and that being a joint promise, all to whom it is made must, or at least may, sue jointly on it, and after having recovered, settle among themselves the proportion of each. This is now well settled in Coryton v. Lythebye, 2 Saund. 116, a. (note 2,) and in Baggs v. Curtin and others, 10 Serg. & Rawle, 211. But in this form of action, no more can be recovered than the money actually received by the defendant; not what he ought to have received, had he acted fairly and honestly. Though there may be some positions in Moses v. M‘Ferlan, 2 Burr. 1005, by Lord Mansfield, which his successors have cancelled out of it, the leading doctrine of the nature of this action never has been questioned. The great objection to some of his positions is, that they have been laid down too large, when he says that a court of common law may sustain this action, wherever one man' has money which another ought to have, or wherever one man has an equitable right to the money, he also has a legal 'action. Since courts of common law cannot administer equity in the same way courts of equity can, we have adopted the most liberal principles in this action, and because we have no court of chancery, sustained the action where one man holds unjustly the money of another. You may, in every case, waive the tort. Where the party has received your money, trespass or trover may be converted into this action. Where the defendant has turned the article into money, or there is reasonable evidence that he has, as in the case of the. masquerade ticket. But where .you do this, you ratify the conversion; you adopt his act, and can recover nothing more than he has received. In England, not even interest; but here, the money received, with the interest. A man may disaffirm the act ab initio, by reason of the fraud, and bring his special action, and recover his actual damages, or affirm it and demand the money; he may make his election. The opinion of the learned judge was certainly correct, as to the right of the plaintiffs, provided the jury were satisfied of an actual declaration of trust by Lee, that he held the property bought in for the benefit of the children, which would be equivalent to an express promise to account for it to them upon a meretorious and legal consideration; for the property of *112 their father was their property, and a slight matter might convert him'into a trustee, requiring, it is true, some evidence of .an acknowledgment of accountability to them, to maintain this action. But, with respect to the amount to be recovered, the court cannot accede to the measure of damages. That is in opposition to the first principle of the action, which is, that no more money can be recovered than the defendant has received. The instruction to the jury is a departure from this, for they were charged, “that if the goods had 'been converted by the defendant fairly and bona fide, the defendant would only have been liable for the exact sum he had received, with interest; but if he had converted the goods by sales at low prices to the prejudice of the trust, he was accountable according to their value, of which the jury were to judge.” Now, we have seen, that wherever the plaintiff makes his election to proceed in this form of action for the money, he affirms the act of conversion and adopts the sale, and goes only for the price, not for the value. In every other matter the opinion is free from exception; but in this there is error.
Gibson, J., was absent.
Judgment reversed, and a venire facias de novo awarded.